CARROLL, Judge.
Webcor, Inc. and its wholly owned subsidiary, Webcor Sales Company, which together will be regarded as the plaintiffs, and hereinafter referred to as Webcor, sued the appellees Saul Tashman and Henry Fine, hereinafter referred to as the guarantors, for $8,254.83 alleged to be owing under a guaranty contract. The trial court granted summary judgment in favor of the defendants, and plaintiff appealed.
The complaint alleged that on March 24, 1961, defendants individually guaranteed payment of the merchandising account of a corporation of which they were members,[1] East Coast Radio and Television Co., Inc., and its successor East Coast Electronics, Inc., hereinafter referred to as the corporation. It was then alleged that between Februai-y of 1962 and May of 1963 from sales and consignments made by Webcor to the corporation there had resulted an unpaid balance of $8,254.83. A copy of a statement of account attached to the complaint as an exhibit showed that over the period just mentioned there were many transactions, charges and payments, and that as of July 25, 1963, the balance due to Webcor according to its records was the said sum of $8,254.83.[2] The complaint alleged demand on the guarantors and nonpayment, and that the corporation was insolvent and involved in bankruptcy proceedings.
The defendant Tashman answered, admitting execution of the guaranty contract of March 24, 1961, denying all other alié- *573 gations of the complaint and defending affirmatively by averring that the agreement of August 31, 1962 for assignment of accounts receivable operated as a release. The defendant Fine answered, admitted the guaranty contract, denied other allegations, and averred he was not indebted to plaintiff. Simultaneously with filing their answers, the guarantors separately moved for summary judgment, which was granted in their favor.
The determinative question on this appeal is whether the agreement between Webcor and the corporation for the latter to assign to Webcor its accounts receivable from sales of consigned merchandise amounted to a novation relieving the corporation of liability to pay Webcor for the consigned merchandise and releasing the guarantors. The trial judge gave that effect to the assignment of accounts receivable, and the appellees contend here that that is the correct construction to be placed on that instrument. We hold otherwise, and reverse.
The pleadings and evidentiary matter which were before the trial court show that in July of 1962 it was decided to change from direct sales by Webcor to the corporation to consignments of merchandise by Webcor to the corporation which it would sell to customers on credit, and as it made collections would remit to Webcor bimonthly for the merchandise so sold, paying to Webcor the wholesale or invoice price at which the merchandise was received by the corporation on consignment. Under that new arrangement the accounts receivable running to the corporation from sales of the consigned goods to its customers on credit were to be assigned to Webcor. At that time, in July of 1962, the corporation was indebted to Webcor for more than $60,000, and provision was made for paying up the then existing balance in the ensuing months through weekly payments ranging from $500 to $2,000. The foregoing is made to appear from a letter from Webcor to the corporation, dated July 25, 1962, which was as follows:
“East Coast Electronics Inc.
1900 West Miami Court Miami, Florida
“Attention: Henry Fine
“Dear Mr. Fine
“This has further reference to my visit last week, with you and Saul.
“As you know, in order to assist with your temporary problems, we discussed a consignment arrangement to. provide merchandise for sale in your territory. In this manner, you would have no investment in inventory and you would therefore effect substantial savings in interest expense. We accordingly are attaching a form of consignment agreement and ask that you acknowledge both copies in behalf of the corporation (on page 3) and both you and Saul will also sign the guarantee on page 4; we will then sign and return one copy to you.
“You will note that the consignment agreement provides for twice monthly payments covering merchandise sold from the consigned stock. We realize that you require longer terms which are passed on to,your dealers. Therefore, I explained that we would require an assignment of all accounts, receivable resulting from sales of Web-cor products. Again * * * this, will effect substantial savings in interest expense which you incur under your present financing program. We must, of course, limit the period of time-which we are willing to carry these receivables * * * perhaps for 90' days. This should give you sufficient time to collect the monies from your dealers * * * and you would remit all collections to us promptly on the 10th and 25th of each month. We are asking our attorney to prepare *574 an assignment and will send this on to you for signature as soon as available.
“Now * * * with respect to the 'balance due for approximately $67,000. We agreed that you will liquidate this with convenient weekly payments beginning the first week in August as follows:
“$500.00 each week in August
$500.00 each week in September
$500.00 each week in October
1,000.00 each week in November
2,000.00 each week in December
'“We will, of course, discuss additional weekly payments the latter part of December, covering January and sub■sequent months.
’“This program as outlined should enable you to continue to ‘sell’ the Web-•cor line on an active basis. Please inform us promptly if you have any 'questions.
“Very truly yours,
“Webcor Sales Company
“C. G. Blake
“General Credit Manager”
Pursuant to the plan announced in the ^above quoted letter of July 25, 1962, Webcor and the corporation entered into an agreement for consignment of merchandise on August 1, 1962. It would unduly lengthen this opinion to set out that agreement in full. Summarized, it provided for consignment by Webcor to the corporation of “electrical appliances, sound equipment and other merchandise normally sold by Web-cor” ; for the receipt and sale thereof by the corporation; that title would remain in Webcor until the merchandise was sold by the corporation, when title would pass •direct to the customer; that the corporation would keep the consigned property separate, and would pay the cost of storage and fire insurance; that the corporation would remit the cost to Webcor bimonthly following sales, and otherwise account for consigned merchandise; that the consignment arrangement would continue for one year, but was terminable by either party on thirty days written notice, or without notice if breached by the corporation, and, if terminated, that the unsold consigned merchandise would be returned to Webcor. Appended thereto was a guaranty by Tash-man and Fine, the pertinent part of which reads as follows :
“I/we, the undersigned, in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, and in consideration of Webcor Sales Company entering into the foregoing agreement with East Coast Electronics, Inc., do hereby guarantee the prompt and faithful performance by East Coast Electronics, Inc., of each and every term and covenant of the foregoing Agreement; this undertaking is an independent undertaking.
“This Guarantee shall continue and remain in force and effect so long as any moneys may remain due and owing to Webcor Sales Company by reason of its supplying merchandise on consignment to East Coast Electronics, Inc., under the terms of the foregoing Agreement.”
As contemplated in the letter of July 25, 1962, the August 1, 1962 consignment contract was supplemented by an agreement dated August 31, 1962, for assignment of accounts receivable from the sale of consigned merchandise. Because of the importance which the trial court attached to this accounts receivable assignment we have set it out in full in the margin.[3]
*575 When the consignment agreement of August 1 and the assignment of accounts receivable dated August 31, 1962, are read together it is shown they were made to implement the plan outlined in the letter of July 25, and the agreement to assign the accounts receivable is revealed as a security arrangement, supporting rather than supplanting the corporation’s obligation to pay for the consigned merchandise after selling it.
We agree with the appellant that the construction placed on these documents by the trial court, and contended for by appellees runs counter to the intent of the parties as determined by the express language of the documents. Nowhere is it stated therein that the assignment of accounts receivable should be accepted in the place of the obligation of the corporation under the consignment contract to pay for the merchandise. On the other hand, it is expressly shown in the letter and in both agreements (of August 1 and August 31, 1962) that the corporation shall be obligated to Webcor for the cost price of the merchandise received on consignment. Moreover, in the document of August 31, 1962' which provides for assignments of accounts receivable, it is expressly stated that the remedies afforded by such assignments-are cumulative, and not in lieu of the-other obligations.
For the reasons stated the judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent herewith.
Reversed and remanded.

. The pertinent language in the guaranty contract of March 4, 1961, was as follows: “In consideration of your extending credit and supplying of merchandise to East Coast Radio and Television Co., Inc., we hereby guarantee to you full and complete payment when due of any sums of money owing to you by reason of the extension of credit to East Coast Radio and Television Co., Inc. This guarantee is to continue until you are notified in writing cancelling the same. Our liability under this guarantee shall not exceed $100,000.00 ⅜ * ⅜.”

. The balance of July 25, 1963 was shown by the statement of account to be the same as that of May 23, 1963, with no intervening transactions.

. “Assignment of Accounts Receivable
“Know All Men By These Presents, that the undersigned, for value received, hereby assigns to Webcor Sales Company, hereinafter called ‘Webcor’, all of the Accounts Receivable for Webeor’s merchandise sold by the undersigned, and all right, title and interest of the undersigned in and to the same and all right, title and interest of the undersigned in and to all ae- *575 counts heretofore, at the present time and hereafter as the same are due and become due from time to time, and all proceeds thereof are hereby assigned to Webcor.
“The undersigned hereby authorizes Webcor to demand, sue for, collect and compromise, and otherwise have all remedies which the undersigned might exercise in connection with said account receivable.
“The undersigned agrees to execute and deliver to Webcor, at any time requested, a true statement of each account but not later than on the 10th and 25th of each month, and to furnish any information desired by Webcor concerning said accounts. Also agrees to allow Webcor’s agents to examine and make extracts of tlie books and records of the undersigned relating to any sales of Webcor’s merchandise.
“The undersigned also agrees to reimburse Webcor for any and all legal and other expenses incurred in about the checking, handling, collections, of accounts assigned to Webcor, if same shall be required.
“The undersigned also agrees to open a Special Account for all monies received as the proceeds of sales made for Webcor’s merchandise and will remit to Webcor on the 10th and 25th of each month. Also agrees to keep separate books of accounts which clearly identifies each transaction relative to Webcor’s: merchandise sold and Accounts Receivable by the undersigned.
“The undersigned agrees that the rights and remedies of Webcor hereunder are accumulative and are not in lieu of, but are in addition to any other rights and’ remedies which Webcor may have under-the Consignment Sales Agreement, personal guarantees, or otherwise.
“The Covenants and Warrants of the-undersigned shall innure to the benefit of Webcor, its successors and assigns-
“In Witness Whereof, the undersigned! has duly executed this instrument, this-31st day of August, 1962.
“It is specifically understood that all1 Notices be mailed to Webcor Sales Company, 5610 W. Bloomingdale Ave., Chicago 39, Illinois, and East Coast Electronics, Inc., 1900 Northwest Miami Court, Miami, Florida.
“For the purpose of determining the place of this assignment and the laws governing same shall be of the State of Illinois, irrespective where the same may be executed.
“East Coast Electronics, Inc. (Seal)
“By s/ Saul Tashmnn President
“Attested s/ Henry Fine Secretary”